Filed 9/24/13  In re Zachary L. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| In re ZACHARY L., a Person Coming Under the Juvenile Court Law. | B244340 |
|  | (Los Angeles County Super. Ct. No. MJ21352) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ZACHARY L.,<br><br>        Defendant and Appellant. |  |

        APPEAL from an order of the Superior Court of Los Angeles County, Akemi Arakai, Judge.  Affirmed.

        Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Zachary L. was declared a ward of the juvenile court after the court sustained a delinquency petition alleging one count of arson and one count of vandalism with damage of $400 or more. On appeal Zachary contends there was insufficient evidence to support the arson finding and the court's restitution award was improperly based on inadmissible, unreliable evidence. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Incidents of Vandalism and Arson*

Between December 5, 2010 and January 17, 2011 Hillview Middle School and Rancho Vista Elementary School experienced an outbreak of small fires and other vandalism, much of it during winter break.[1] The damage was initially limited to broken security lights in two classrooms and graffiti on doors, trash cans, drinking fountains and walls. However, on January 2, 2011 the maintenance department reported at least three trash cans had been set on fire, a playground slide was burned and windows in three different classrooms were broken. Although not recorded in the maintenance department's damage report, a portable toilet was also set on fire and a lounge window broken.

During one of the incidents a school maintenance worker noticed a group of students trespassing on school grounds and photographed them. Zachary, then 11 years old, was one of the students identified in the picture. Zachary gave a written statement to Rancho Vista Vice Principal Deborah Rutkowski-Hines in which he admitted being involved in arson and "some other stuff," including broken windows, fires, broken lights and the theft of $2 from a classroom. He wrote, "I feel really really bad about everything. I wish I never did this at all." Zachary provided the names of the other students who had participated in the vandalism with him.

After Zachary gave his written statement, he was interviewed by Los Angeles County Deputy Sheriff Omar Chavez. Prior to being questioned Zachary was advised of his right to remain silent, to the presence of an attorney, and, if indigent, to appointed

---

[1]     The two schools share a common yard and playground.

counsel.  (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].)
Deputy Chavez recorded Zachary's answers to his questions on a *Gladys R.* admonition
form.[2]  When asked if he knew it was wrong to start fires, Zachary stated, "Yes, it is very
bad.  I wish I had nothing to do with it."  When asked if he knew it was wrong to start
fires before December of 2010, he responded, "Yes because we could have burned down
the school."

2. *The Jurisdiction Hearing*

The District Attorney filed a delinquency petition on March 27, 2012 pursuant to
Welfare and Institutions Code section 602 alleging Zachary had committed one felony
count of arson for burning the playground slide and the portable toilet (Pen. Code, § 451,
subd. (d))[3] and one felony count of vandalism for breaking the safety glass windows
(§ 594, subd. (a)).[4]

At the jurisdiction hearing on September 13, 2012 Deputy Chavez testified
Zachary told him he was involved in breaking the classroom window with his scooter and

---

[2]     In *In re Gladys R.* (1970) 1 Cal.3d 855, 867, the Supreme Court "conditioned
wardship under [Welfare and Institutions Code] section 602 on meeting the capacity test
articulated in Penal Code section 26." (*In re Manuel L.* (1994) 7 Cal.4th 229, 235; see *id.*
at p. 236 [finding of capacity under Pen. Code, § 26 "is a prerequisite to an adjudication
of wardship"].)  Penal Code section 26 provides, in part, "All persons are capable of
committing crimes except those belonging to the following classes:  [¶]  One—Children
under the age of 14, in the absence of clear proof that at the time of committing the act
charged against them, they knew its wrongfulness."  The *Gladys R.* form is designed to
permit a determination of the capacity of a minor to understand the concepts of right and
wrong.

[3]     Penal Code section 451, subdivision (d), provides, "Arson of property is a felony
punishable by imprisonment in the state prison for 16 months, two, or three years.  For
purposes of this paragraph, arson of property does not include one burning or causing to
be burned his or her own personal property unless there is an intent to defraud or there is
injury to another person or another person's structure, forest land, or property."

[4]     Penal Code section 594, subdivision (a), provides in part, "Every person who
maliciously commits any of the following acts with respect to any real or personal
property not his or her own, in cases other than those specified by state law, is guilty of
vandalism:  [¶]  (1) Defaces with graffiti or other inscribed material.  [¶]  (2) Damages.
[¶]  (3) Destroys."

he was present when some of the small fires were set around the school. Zachary denied he was at school when the playground slide was burned, but said he knew the boy from the neighborhood who had started the fire and provided the name of that individual and another who was present at the time.

Rutkowski-Hines testified as to the damage she observed, and Westside Union School District Risk Manager Rhonda Hanson testified about the repair and replacement costs for the damage based on estimates from the maintenance department. Zachary's counsel objected the report prepared by Hanson was inadmissible hearsay and lacked foundation because the estimates came from the maintenance department, not Hanson personally. Both objections were overruled.

At the close of the People's case Zachary's counsel moved to dismiss the petition pursuant to Welfare and Institutions Code section 701.1, arguing the People had failed to prove Zachary committed arson or had aided and abetted the commission of that offense by others. His counsel also moved to reduce the vandalism count to a misdemeanor, asserting the damages totaled less than $400: The total reported cost to repair the three broken classroom windows was $324, and no estimate was listed for a fourth broken lounge window. After hearing argument, the court denied the motion.

Zachary testified in his own defense. He acknowledged he had broken a classroom window and stolen $2, but insisted he did not break anything else. Zachary also said he was not present during any of the fires, including when the slide was set on fire. When asked what he meant when he wrote that he had been "involved" in the arson on the written statement provided to Rutkowski-Hines, Zachary testified he was referring to the fact that the other boys told him of their plan to set the fires before they occurred. "I heard them talking that they were going to start a few fires, and I told them it's not smart and I walked away." Zachary said the first he heard about the slide was a few days later when two boys, Tyler and Bryce, came to his house and told him they had burned the slide. Zachary said he told Deputy Chavez he was not near the fires and had not started any of them, but he knew about the fires and who had participated in setting them.

4

Zachary's counsel again moved to dismiss the arson count due to insufficiency of the evidence and to reduce the vandalism count to a misdemeanor. The court again denied the motions, sustained the petition as to both counts and declared both counts felonies.

3. *Disposition*

After sustaining the petition, the court declared Zachary a ward of the court and placed him home on probation. The court also ordered Zachary to pay $2,522.32 in restitution based on the estimates for the damage reported January 2, 2011, which included the repair of three trash cans and the replacement of three windows, a trash can and the slide.

## DISCUSSION

1. *Substantial Evidence Supports the Finding Zachary Aided and Abetted Arson*

Zachary admitted in his written statement to Vice Principal Rutkowski-Hines he had been "[i]nvolved in arson" and told Deputy Chavez he knew it was wrong to start fires "because we could have burned down the school" and he "wish[ed] he had nothing to do with it." Yet he contends the evidence is insufficient to find he committed arson by setting fire himself to the portable toilet and playground slide on January 2, 2011 or by aiding and abetting the commission of that offense by his confederates.[5]

An aider and abettor must "act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [Citations.] [¶] When the definition of the

_____

[5]    The same standard governs review of the sufficiency of the evidence in juvenile cases as in adult criminal cases: "[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] . . . [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] . . . [Citaiton.] We resolve neither credibility issues nor evidentiary conflicts . . . . [Citation.] [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime [citation], the aider and abettor must share the specific intent of the perpetrator. . . . [Citation.] [A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.] The liability of an aider and abettor extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." (*People v. Beeman* (1984) 35 Cal.3d 547, 560; see *People v. Perez* (2005) 35 Cal.4th 1219, 1225 ["proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime"].) Whether a person has aided and abetted in the commission of a crime is ordinarily a question of fact. (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094.)

Ample evidence supports the juvenile court's finding Zachary not only had knowledge of his companions' criminal purpose but also an intent to encourage or facilitate their act of arson and did, in fact, promote their commission of that crime. (See *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["[e]vidence of a defendant's state of mind is almost inevitably circumstantial, [and] circumstantial evidence is as sufficient as direct evidence to support a conviction"].) To be sure, neither presence at the scene of a crime nor the failure to take steps to prevent it, standing alone, is sufficient to establish aiding and abetting. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409; *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460.) Nonetheless, presence at the scene, as well as companionship and conduct before and after the offense, are among the factors that may be considered in determining aiding and abetting. (*In re Juan G., supra*, 112 Cal.App.4th at p. 5; *Jose T.*, at p. 1460.)

6

Here, Zachary acknowledged he knew of the other boys' criminal intent in advance of the fires and conceded he was present at the school yard (and broke a window) on January 2, 2011, the day the slide and portable toilet were burned. In addition, although he subsequently denied it, Zachary told Deputy Chavez he was at the school yard when several of the trash can fires were set. Moreover, as discussed, Zachary admitted to the elementary school's vice principal he was involved in arson, responded to Chavez that he now wished he had nothing to do with setting the fires, and also told Chavez it was wrong to set fires because "we"—not "they"—could have burned down the school. These admissions plainly support a finding Zachary aided and abetted his companions' fire-setting activity. (See *People v. Culuko* (2000) 78 Cal.App.4th 307, 319-320 [aiding and abetting conviction upheld where evidence included defendant's statements to perpetrator that "'it's pointing on both of us'" and "'it's better for both of us'"].)

Zachary's culpable involvement in the arson on January 2, 2011 is reinforced by his conduct in the days immediately preceding it. The slide and portable toilet were damaged as part of a month-long crime spree in which Zachary was a highly active participant. It was reasonable for the juvenile court to infer that Zachary's actions in vandalizing property and stealing money from a classroom in concert with the other youths encouraged his companions to continue their criminal misbehavior by setting the slide and portable toilet on fire. (See *People v. Nguyen* (1993) 21 Cal.App.4th 518, 530 ["[a] defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular crime ultimately committed by the perpetrator . . . [i]t is the intent to encourage and bring about conduct that is criminal, not the specific intent of the target offense, which . . . must be found"].)

2. *The Restitution Award Was Proper*

Welfare and Institutions Code section 730.6 authorizes the juvenile court to award direct restitution from a minor to his or her victims for any economic loss suffered as a result of the minor's conduct. (Welf. & Inst. Code, § 730.6, subd. (a)(2)(B).) With respect to a victim restitution order (in contrast to a restitution fine), the minor's inability

7

to pay is not to be considered by the court in determining the amount of restitution. (Welf. & Inst. Code, § 730.6, subd. (h).)

We review a restitution order for abuse of discretion. (*In re Dina V.* (2007) 151 Cal.App.4th 486, 490.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. "'[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.'"" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) "That a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution improper." (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1210.) The juvenile court is entitled to consider the probation report, and even a victim's mere statement of loss included in a probation report is sufficient to establish prima facie evidence of loss. (*Gemelli,* at p. 1543.) "Once the victim makes a prima facie showing of economic losses incurred as a result of . . . criminal acts, the burden shifts to the [minor] to disprove the amount of losses claimed by the victim." (*Ibid*.)

Here, the juvenile court acted well within its discretion in ordering victim restitution in the sum of $2,522.32 to the two schools, using a rational and factual method to make them whole.[6] The court properly based its award on the document prepared by Hanson, which listed the dates the damage was incurred, which of the two schools suffered the loss, a description of the damaged item, the amount of time and labor it took to repair the damage or replace the items and the cost. Hanson testified she prepared the report after being given estimates from the maintenance department, whose custodial staff repaired and replaced the items over winter break. This evidence was reliable and, although hearsay, admissible at the disposition phase of a delinquency proceeding. (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 243.)

---

[6] It is clear from the record the award was ordered as victim restitution, not as a condition of probation. Accordingly, we do not consider Zachary's alternative argument that the court may not impose an award unrelated to proven damages as a condition of probation.

**DISPOSITION**

The juvenile court's order is affirmed.


                                        PERLUSS, P.J.

We concur:



        WOODS, J.



        ZELON, J.